UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPHAEL OKORO,

    Plaintiff,

vs.             Civil No. 05-CV-70269-DT

JEFF KRUEGER; JOHN HEMINGWAY   HON. PAUL D. BORMAN
(INDIVIDUALLY); T.A. ZAMORA; H.J.
MARBERRY; DIRECTOR OF PRISONS;  (Mag. Judge Virginia M. Morgan)
MICHAEL NALL[E]Y; JANICE BONNEVILLE;
LT. D. TANEL; LT. BLACK; OFFICER BILLINGSLEY
(UNIT COUNSELOR),

    Defendants.

_____/

## MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT BY DEFENDANTS KRUEGER, ZAMORA, MARBERRY, DIRECTOR LAPPIN, NALLEY, BONNEVILLE, TANEL & BLACK

Defendants[1] Jeffrey E. Krueger, former Associate Warden and briefly Acting Warden at the

Federal Correctional Institution at Milan, Michigan ("FCI, Milan") (sued in both his official and

individual capacities); T.A. Zamora, former Inmate Systems Manager at FCI, Milan (sued in both

---

[1]  Ninth defendant, John R. Hemingway, former Warden of F.C.I. Milan (now retired) (sued both in his official and individual capacities) is *not* before this Court at this time and so does not join in this motion.  Upon information and belief, Hemingway has *not* been served process despite any purported returns of service of process by Okoro (docket items # # 4 & 13).  The first return for Hemingway [4] reflects mail "c/o Marberry," the present Warden at FCI, Milan; yet Hemingway was not then employed at that facility and, I am informed, did not authorize anyone at FCI, Milan to accept service for him.  The abortive service papers for Hemingway were, I am told, mailed back to Okoro with a cover letter explaining why.  The second return for Hemingway [13] shows service directed to him "c/o" the U.S. Attorney General in Washington, D.C.  There is no reason to believe that retired BOP employee Hemingway authorized the Attorney General of the United States to accept service of process on his behalf.  of a summons.  A tenth defendant, James Billingsley, a corrections counselor, was added in the [32] amended pleading (entitled "Second Re-Filing of Writ of Mandamus Complaint"), for which Okoro did not obtain court permission, only in connection with not providing an administrative remedy form; and Billingsley has not been served process nor has he waived service of a summons and likewise is *not* before this Court.

her official and individual capacities); H. J. Marberry, former Warden at FCI, Milan (sued in her

official capacity and possibly also[2] her individual capacity); Director of [the Federal Bureau of]

Prisons ("BOP") (Harley G. Lappin) (sued in both his official and individual capacities); Michael

K. Nalley, BOP Regional Director, North Central Regional Office (sued in both his official and

individual capacities); Janice L. Bonneville, former Attorney Advisor at BOP's St. Louis

Consolidated Legal Center (sued in both her official and individual capacities); Deena Tanel,

Lieutenant at FCI, Milan (sued in both her official and individual capacities); and James Black,

Lieutenant at FCI, Milan (sued in both his official and individual capacities) move this Court,

pursuant to Fed. R. Civ. P. 12(b)(2), (b)(5) and (b)(6) and/or in part pursuant to Fed. R. Civ. P. 56,

for dismissal and/or summary judgment.

　　　　This motion relies upon the pleadings, a supporting brief and Ex. 1(Zebot Declaration and

---

[2]   Compare R. 1: Compl. ¶ 14 and R. 32: Amended Compl. ¶ 15.

attachments),[3] Ex. 2 (McCrea Declaration and attachments ),[4] Ex. 3 (Brown Declaration), Ex. 4

(Krueger Declaration), Ex. 5 (Zamora Declaration), Ex. 6 (Tanel Declaration and attachments) and

Ex. 7 (Black Declaration).

Respectfully submitted,

STEPHEN J. MURPHY
United States Attorney


s/Francis L. Zebot
FRANCIS L. ZEBOT
Assistant U.S. Attorney
211 W. Fort St., Suite 2001
Detroit, Michigan 48226
(313) 226-9774
E-mail: francis.zebot@usdoj.gov
P22700

Dated: May 10, 2007

---

[3]  With respect to attachment B (BOP Program Statement 1351.05, *Release of Information*), it is incorporated by reference in Exhibit 1 to Okoro's complaint (Warden Hemingway's September 27, 2002 Memorandum for Inmates implementing at FCI, Milan the changes in the Program Statement concerning PSRs and SORs).  *See* Fed. R. Civ. P. 10(c).

[4]  The McCrea declaration and attachments concern failure to exhaust administrative remedies leading to summary judgment on that issue, if dismissal based solely on Okoro's own admissions is not granted independent of those papers.

# BRIEF IN SUPPORT OF
# MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT BY DEFENDANTS KRUEGER, ZAMORA, MARBERRY, DIRECTOR LAPPIN, NALLEY, BONNEVILLE, TANEL & BLACK

## ISSUES PRESENTED

1. *Whether the Court should dismiss defendants Director Lappin and Nalley in their individual capacities for lack of personal jurisdiction since they do not have minimum contacts with the forum state to justify such jurisdiction?*

2. *Whether the Court should dismiss defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel and Black for insufficiency of service of process both because Okoro, a party, effected service upon them and because the United States has not been served process for a suit against its officers and employees?*

3. *Whether the Court should dismiss Okoro's action or alternatively grant defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel and Black summary judgment because Okoro has not exhausted his administrative remedies under the Prisoner Litigation Reform Act of 1995?*

4. *Whether the Court should dismiss all of Okoro's claims against defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel and Black because of qualified immunity? (including failure to state a constitutional claim, lack of allegations of personal involvement, improper implicit respondeat superior theory, and insufficient conspiracy/aiding and abetting allegations)*

5. *Whether the Court should dismiss the declaratory and injunctive claims concerning the Bureau of Prisons's regulation prohibiting inmates' possession of their PSRs and SORs because Okoro fails to state a claim upon which relief can be granted.*

6. *Whether the Court should dismiss Okoro's retaliation claims against defendants Krueger, Zamora, Tanel, Black for insufficient pleading or alternatively grant these defendants summary judgment on the retaliation claims?*

<u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Argument 1: Personal Jurisdiction*

- *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)

- *Stafford v.Briggs*, 444 U.S. 527 (1980)

*Argument 2: Insufficiency of Service of Process*

- Fed. R. Civ. P. 4(c)(2)

- *Boltes v. Entex*, 158 F.R.D. 110 (D.C. Tex. 1994)

*Argument 3: Exhaustion*

- *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999)

- *Jones v. Bock*, 127 S.Ct. 910 (2007)

- *Woodford v. Ngo*, 126 S.Ct. 2378 (2006)

- 28 C.F.R. § 542.14(d)(1) (2006)

*Argument 4: Qualified Immunity*

- *Katz v. Saucier*, 533 U.S. 194 (2001)

A. Failure to State a Constitutional Claim

- *United States Dep't of Justice v. Julian*, 486 U.S. 1 (1988)

- BOP Program Statement 1351.05, ¶ 12.a(2)(d)(1)

- *Elrod v. Swanson*, ____ F.Supp.2d ____, 2007 WL 851235 (D.Kan. March 19, 2007)

- *Flick v. Alba*, 932 F.2d 728 (8th Cir. 1991)

B. No Personal Involvement

- *Lanier v. Bryant*, 332 F.3d 999 (6th Cir. 2003)

- *Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004)

• *Dewey v. University of New Hampshire*, 694 F.2d 1 (1st Cir. 1982)

C. NO *RESPONDEAT SUPERIOR* LIABILITY

• *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000)

D. INSUFFICIENT CONSPIRACY/AIDING & ABETTING ALLEGATIONS

• *Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004)

• *Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971)

• *Lepley v. Dresser*, 681 F.Supp. 418 (W.D. Mich. 1988)

*Argument 5: Failure to State Claim for Declaratory/Injunctive Relief (Official Capacity)*

• *FDIC v. Meyer*, 510 U.S. 471 (1994)

• *Dugan v. Rank*, 372 U.S. 609 (1963)

*Argument 6: Failure to State Retaliation Claim (or Summary Judgment)*

• *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc)

STATEMENT

On April 8, 2003,[5] Plaintiff Ralphael Okoro ("Okoro"), a federal prisoner at the Federal

Correctional Institution at Milan, Michigan ("FCI Milan"), filed with court permission an amended

complaint against John Hemingway, then Warden of FCI Milan, alleging that Hemingway in his

official and individual capacities violated Okoro's First and Eighth Amendment rights by enforcing

a national BOP policy (Program Statement 1351.05, *Release of Information* 9/19/2002) prohibiting

inmates from possessing their PSRs and SORs; he sought mandamus against Hemingway, an

injunction against Hemingway's "policy," declaratory relief that the policy was unconstitutional,

and punitive damages of $50,000,000.00 against Hemingway in both his individual and official

capacities for emotional, mental, and psychological anguish.[6]  (*Okoro v. Hemingway*, No. 02-cv-

74214: R. 15: Complaint.)  That earlier case was dismissed because Okoro invoked the benefit of *in

forma pauperis* status despite having "three strikes" against him with the meaning of 28 U.S.C.

§ 1915(g).  (*Okoro v. Hemingway*, No. 02-cv-74214: R. 34: Report and Recommendation; R. 36,

37: Order Accepting R & R Granting Hemingway's Motion to Dismiss, Judgment.)  That ruling

---

[5]  Initially, on October 23, 2002, Okoro together with three other inmates (Gerry Perry, Imad Saadeh, and Kingsley Obi) filed an application to waive prepayment of filing fees in connection with a purported class action regarding the Federal Bureau of Prisons ("BOP") policy against possessing Presentence Reports ("PSRs") and Statement of Reasons ("SORs") in Judgment and Commitment Orders.  This Court denied those applications.  (*Okoro et al. v. Hemingway,* No. 02-cv-74214: R. 5.)  Later, Okoro decided to file an amended pleading going solo and eventually had his application to waive prepayment of filing fees granted.  (*Okoro v. Hemingway,* No. 02-cv-74214: R. 14; *see also* R. 6 - 13.)

[6]  Specifically, Okoro alleged that on October 2, 2002, Hemingway had arranged posting on FCI Milan inmates' notice board a September 27, 2002 memorandum to inmates implementing BOP Program Statement 1351.05 commanding that "no later than November 2, 2002" inmates must remove from the institution any copies of PSRs and SORs in their possession; after this "grace period," according to the memorandum, inmates had to dispose of their photocopies of PSRs and SORs by mailing to an outside person, personally destroying them or delivering them to a staff member for destruction.  (*Okoro v. Hemingway*, No. 02-cv-74214: R. 15: Ex. 1to Complaint; *see also* in this action R. 1: Ex. 1 to Complaint.)

was sustained on appeal with the modification that the dismissal was without prejudice to Okoro's right to re-file the action upon payment of the applicable filing fee.  (*Okoro v. Hemingway*, No. 02-cv-74214: R. 48: Sixth Circuit order; R. 51: Sixth Circuit mandate.)

On January 12, 2004, in view of the Sixth Circuit's action this Court issued an order directing Okoro to re-file his mandamus action with the clerk's office within 30 days and directing the clerk's office to hold his filing fee that Okoro had paid after the Sixth Circuit's ruling until such timely filing.  (*Okoro v. Hemingway*, No. 02-cv-74214: R. 50.)

On January 26, 2005, Okoro complied with that order and filed a new mandamus complaint that was assigned this case number (05-cv-70269).[7]  (R. 1.)  Unlike the previous case, the new complaint in this action was directed not only at Hemingway, but rather added eight BOP defendants in addition to Hemingway.  Okoro sought an injunction against "defendants" arbitrary policy declaring inmates' copies of PSRs and SORs as contraband and demanding their destruction by staff at FCI Milan pending finality of the case; a declaration that "defendants" arbitrary policy is unconstitutional (apparently for unspecified First, Fifth, and Eighth Amendment violations) (see Compl. ¶ 2); compensatory damages of $50,000,000.00 against each defendant in his or her individual and official capacities; and punitive damages of $100,000,000.00 against each defendant in his or her individual and official capacities.  (R. 1: Compl., "Relief Requested" ¶ 21.)  In addition to alleging that "defendants" conspired with and aided and abetted each other to declare the PSRs and SORs contraband and to demand their immediate destruction by staff (R. 1: Compl. ¶ 2), Okoro also raised generally claims of retaliation by "defendants" for bringing his mandamus complaints.  (R. 1: Compl. ¶ 20.)

Rather than answering or filing a preliminary Rule 12 motion, defendants filed a Notice of

---

[7]  The case drew Judge Duggan on blind draw, but was reassigned as a companion case to Judge Borman.  (R.11.)

Waiver of Reply on May 9, 2005.[8]  (R. 20.)  In a footnote, defendants observed that Okoro did not

comply with (then) Sixth Circuit authority for special pleading requirements ("particularized

averment") to show exhaustion of administrative remedies under the PLRA and suggested that the

Court should engage in screening under 28 U.S.C. § 1915A or "own motion" review under 42

U.S.C. § 1997e(c).  *Id.*, n.2 at 3.  On August 16, 2005, this Court dismissed Okoro's complaint

without prejudice for failure to satisfy the Sixth Circuit's "particularized averment" requirement

pertaining to exhaustion of administrative remedies.  (R. 29 at 2.)  Okoro's timely motion for

reconsideration was denied on September 9, 2005.  (R. 30, 31.)

On October 5, 2005, with this case closed and without seeking any permission, Okoro filed a

new complaint with the same case number (entitled "Second Re-Filing of Writ of Mandamus

Complaint Upon Exhaustion of Administrative Remedy") in which he added a tenth defendant

(Billingsley), who he alleged participated in a plan to deprive him of a BP-9 administrative remedy

form (see ¶ 2), but in a complaint similar to the original one in this action (R. 1) he alleged having

exhausted his administrative remedies by bypassing the step-one level.[9]  (R. 32.)  After a Notice of

Waiver of Reply by Director Lappin in his official capacity only[10] (R. 33), Okoro's miscellaneous

motion contending that after alleged exhaustion of administrative remedies, he was entitled to (re-)

file a new complaint within the closed action (R. 34), and a flurry of related papers (R. 36-40), on

February 1, 2006, the Court followed the recommended disposition of the Magistrate Judge, struck

---

[8]  Pursuant to the Prisoner Litigation Reform Act of 1995 ("PLRA").  *See* 42 U.S.C.
§ 1997e(g).

[9]  Okoro did not serve process or obtain a signed waiver of service of summons from
Billingsley or any of the other defendants in this new complaint.

[10]  In a footnote, Lappin suggested that the Court should strike the new complaint and that
if Okoro wanted to proceed, he should file a new action and  prepay his civil filing fee.  (R. 33 at
n.2.)

Okoro's new complaint and his miscellaneous motion, and directed that if Okoro sought to reopen and reinstate his case, he needed to submit a motion with documentation (R. 41).

On February 7, 2006, Okoro then filed a motion to reinstate and reopen.  (R. 42.)  On May 30, 2006, the Court followed the recommended disposition of the Magistrate Judge, denying the motion to reinstate and reopen on the basis that Okoro did not rely on any ground recognized under Rule 60(b) of the Federal Rules of Civil Procedure to obtain relief from a final judgment or order; it cited Okoro's concession that he had not exhausted his administrative remedies before filing suit as required by 42 U.S.C. § 1997e(a) and noted that Okoro's option was to file a new lawsuit, not to reopen this lawsuit, citing language from *Gunther v. Ohio Department of Corrections*, 198 F.3d 245, 1999 WL 1045168 (6th Cir.).  (R. 45: R & R; R. 50: Order; *see also* R. 46-49.)

On June 5, 2006, Okoro filed a notice of appeal from that order denying the motion to reinstate and reopen and paid his appeal fee.  (R. 51 & 59.)  The Sixth Circuit did not address Okoro's appeal argument for reversing the denial of the motion to reinstate and reopen; rather, *sua sponte*, the panel pointed out and raised its own Rule 60(b)(1) issue for mistake grounded in "legal error" in that the district court had relied on then Sixth Circuit law in its original dismissal (R. 29, 31) that has been reversed by the Supreme Court in *Jones v. Bock*, 127 S.Ct. 910, 921, 923-25 (2007); specifically, Sixth Circuit law that had interpreted the PLRA to require prisoner litigants to plead that they had exhausted their available administrative remedies with respect to all of their claims, an interpretation of the PLRA that was rejected by *Jones* which treats failure to exhaust as an affirmative defense.  (R. 60: Appeal Judgment in *Okoro v. Hemingway, et al.*, Sixth Circuit No. 06-1816.)  Thus, the Sixth Circuit reversed the dismissal of Okoro's complaint (R. 1) and remanded the case for "further proceedings consistent with *Jones*." (*Id.*)

Under that remand, the Court and the parties are referred back to Okoro's complaint.[11]

(R. 1.)  Against the specific defendants bringing this motion, Okoro made the following allegations.

*Krueger* (former Associate Warden and briefly Acting Warden at FCI Milan): he is broadly and

conclusorily alleged to have conspired with and aided and abetted Warden Hemingway, BOP

Director Lappin, BOP Regional Director Nalley, BOP attorney Bonneville, and some unknown

members of BOP's national administrative body in "their" arbitrary enforcement of "their"

declaration of PSRs and SORs (court documents) as contraband and "their" destruction of them

as violations of the First, Fifth, and Eighth Amendments (R. 1: Compl. ¶ 11);[12] Krueger is also

alleged to have conspired with and aided and abetted others in retaliation claims for Okoro's

mandamus complaints — both with Zamora, former FCI Milan Inmate Systems Manager, and

Hemingway to intercept and destroy a certified legal mail with his amended mandamus complaint

in his prior action (02-cv-74214) and with Zamora alone to obstruct and destroy personal mails to

and from his father in Nigeria (R. 1: Comp. ¶ 13; *see also* R. 32: Amended Compl. ¶ 14).  In

addition, Krueger is alleged to have conspired with and aided and abetted Lieutenants Tanel and

Black apparently in connection with three different sets of incidents (an administrative detention for

two weeks without proper reason, an allegedly attempted frame-up drug-positive urinalysis, and

various specified legal document searches of his locker from November 2, 2002 through 2004) also

allegedly in retaliation for Okoro's mandamus complaints; the only specificity being that Krueger

allegedly "direct[ed]" Tanel and Black to attempt to frame Okoro with a drug-positive urinalysis.

---

[11]  The amended complaint (R. 32), for which Okoro did not have court permission, attempted to state a subsequent exhaustion of administrative remedies *after* the filing of the original complaint (R. 1) in this action.  Should this Court determine that the amended complaint now needs to be addressed, defendants also address those allegations.

[12]  In the amended complaint (R.32) the allegations against Krueger are the same except for replacing Marberry for the unknown members of BOP's national administrative body. (R. 32: Amended Comp. ¶ 12.)

(R. 1: Compl. ¶ 18; *see also* R. 32: Amended Compl. ¶ 19.)  Finally, in the amended complaint Okoro briefly adds Krueger's name to a conspiracy/aiding and abetting claim for depriving him of a BP-9 form.  (R. 32: Amended Compl. ¶ 2, last paragraph at 5.)

    *Zamora* (former Inmate Systems Manager at FCI, Milan): in charge of the mailroom operation among other duties, she is alleged to have conspired with and aided and abetted Warden Hemingway and Associate Warden Krueger in retaliation claims for Okoro's mandamus complaints to intercept and destroy a certified legal mail with his amended mandamus complaint in his prior action (02-cv-74214) and with Krueger alone to obstruct and destroy personal mails to and from Okoro's father in Nigeria (R. 1: Compl. ¶ 13; *see also* R. 32: Amended Compl. ¶ 14).  Finally, in the amended complaint Okoro briefly adds Zamora's name to a conspiracy/aiding and abetting claim for depriving him of a BP-9 form.  (R. 32: Amended Compl. ¶ 2, last paragraph at 5.)

    *Marberry* (former Warden of FCI, Milan succeeding Hemingway): in her official capacity, she "inherited" and was liable for Hemingway's arbitrary action (presumably im implementing the BOP national policy regarding PSRs and SORs at FCI, Milan).  (R. 1: Compl. ¶ 14.)  In the amended complaint, Okoro adds that in her individual and officials capacities Marberry allegedly conspired with and aided and abetted BOP attorney Bonneville and counselor Billingsley to deprive Okoro of his BP 9 administrative remedy form.  (R. 32: Amended Compl. ¶ 15; *see also* ¶ 2, last paragraph at 5.)

    *BOP Director (Lappin)*: he is broadly and conclusorily alleged to have conspired with and aided and abetted BOP Regional Director Nalley, Warden Hemingway, Associate Warden Krueger, BOP attorney Bonneville, and some unknown members of BOP's national administrative body (in the national policy) to declare PSRs and SORs as contraband and to command their destruction by staff in violation of First, Fifth, and Eighth Amendments.  (R. 1: Compl. ¶ 15; *see also* R. 32: Amended Compl. ¶ 16.)  Director Lappin is further alleged to have conspired with the same

individuals to deny Okoro adequate notice and sufficient time to exhaust his administrative remedies before publishing the policy.  (R. 1: Compl. ¶ 15.)

*Nalley* (BOP Regional Director): Okoro vaguely alleged that Nalley conspired with and aided and abetted BOP Director (Lappin), Hemingway, Krueger, Bonneville, and violation of the First, Fifth, and Eighth Amendments.  (R. 1: Compl. ¶ 16.)[13]  Finally, in the amended complaint Okoro briefly adds Nalley's name to a conspiracy/aiding and abetting claim for depriving him of a BP-9 form.  (R. 32: Amended Compl. ¶ 2, last paragraph at 5.)

*Bonneville* (former BOP Attorney Advisor in St. Louis, MO): Okoro vaguely alleged that Bonneville conspired with and aided and abetted BOP Director (Lappin), Hemingway, Krueger, and unknown members of BOP's national administrative body in violation of the First, Fifth, and Eighth Amendments.  (R. 1: Compl. ¶ 17.)  In the amended complaint (R. 32), Okoro clarifies the same allegations only a trifle by hitching them to the idea of declaring PSRs and SORs to be contraband and demanding their destruction by staff.  (R. 32: Amended Compl. ¶ 18); also, Bonneville is alleged to have conspired with and aided and abetted Marberry and Billingsley in depriving Okoro access to the BP-9 (administrative remedy) process (*Id.* plus ¶ 2, last paragraph at 5).

*Tanel* (Lieutenant at FCI, Milan): Tanel is alleged to have conspired with and aided and abetted fellow Lieutenant Black as well as Associate Warden Krueger in retaliation claims for Okoro's mandamus complaints (1) by lying against Okoro to get him into administrative detention for two weeks; (2) at the direction of Krueger, she and Black allegedly tried to frame Okoro with drug-positive urinalysis; and (3) at her direction, an unspecified unit officer on November 2, 2002 and an unspecified "they" on many later occasions on specified dates in 2002, 2003, and 2004

---

[13]  In the amended complaint (R. 32), the same allegations against Nalley merely add to the list of conspirators unknown members of BOP's national administrative body.  (R. 32: Amended Compl. ¶ 17.)

searched Okoro's locker allegedly looking for his PSR and SOR.  (R. 1: Compl. ¶ 18; *see also*
R. 32: Amended Compl. ¶ 19 — adding some specific search dates in 2005.)  Finally, in the
amended complaint Okoro briefly adds Tanel's name to a conspiracy/aiding and abetting claim for
depriving him of a BP-9 form.  (R. 32: Amended Compl. ¶ 2, last paragraph at 5.)

*Black* (Lieutenant at FCI, Milan): Black is alleged to have conspired with and aided and
abetted fellow Lieutenant Tanel as well as Associate Warden Krueger in retaliation claims for
Okoro's mandamus complaints (1) by lying against Okoro to get him into administrative detention
for two weeks; (2) at the direction of Krueger, he and Tanel allegedly tried to frame Okoro with
drug-positive urinalysis; and (3) had an unspecified role in the various Okoro locker searches
starting November 2, 2002 and on specified dates in 2002-2005 allegedly intended to find his PSR
and SOR.  (R. 1: Compl. ¶ 18; *see also* R. 32: Amended Compl. ¶ 19.)  Finally, in the amended
complaint Okoro briefly adds Black's name to a conspiracy/aiding and abetting claim for depriving
him of a BP-9 form.  (R. 32: Amended Compl. ¶ 2, last paragraph at 5.)

Okoro has not alleged any acts or omissions by Director Lappin (located in Washington,
D.C.) and Regional Director Nalley (located in Kansas City, KS) that show minimum contacts with
the forum state of Michigan.  (*See* R. 1: Compl. ¶¶ 15, 16; R. 32: Amended Compl. ¶¶ 16, 17.)

On February 12, 2005, Okoro filed returns of service showing that he, personally, served
process by certified mail on defendants Krueger, Zamora, Marberry, Nalley, Bonneville, and Black.
(R. 5, 7, 6, 3, 2, 8.)  On information and belief, defendant Tanel also received process (summons
and complaint) by certified mail, directly from Okoro, that was received February 18, 2005.  Also,
on information and belief, Director Lappin obtained process from BOP legal staff; Okoro alleges
that he personally served Lappin process by ordinary mail sent February 12, 2005 to his
Washington (D.C.) address.  (R. 10: Okoro's Reply to Defendants' Request to Correct Summonses
at 1, ¶ 1.)

Okoro did not serve process on the United States Attorney (Ex. 1: Zebot Decl.); and he has not filed any return of service showing service of process on the Attorney General of the United States.

Okoro did not file any administrative remedy with regard to his claims in this action before he filed this lawsuit on January 26, 2005.  (Ex. 2: McCrea Decl. plus Ex. 3: Brown Decl.)  Having allegedly been denied a first-stage BP-9 administrative remedy form to fill out, Okoro later brought an administrative remedy at the second (regional) stage (dated 8-19-05) on a BP-10 form he obtained from another inmate and contended that it raised a "sensitive issue" under 28 C.F.R. § 542.14(d)(1).  (R. 32: Amended Compl. ¶ 2 at 3 & Ex. X (p. 17 of 28).  On September 2, 2005, the BOP North Central Regional Office rejected  Okoro's administrative remedy for three reasons: (1) Okoro did not attempt informal resolution before submission of administrative remedy; (2) Okoro did not first file a BP-9 form to address his concerns at the institutional level; and (3) the issue raise was not sensitive to allow skipping the first institutional level.  (R. 32: App. C) (p. 20 of 28).  After Okoro appealed to Central Office, the latter on September 19, 2005, likewise rejected the appeal for the same three reasons.  (R. 32: App. D) (p. 21 of 28).  Okoro does not allege any further administrative remedy attempts after the rejections.  (R. 32; see also Ex. 2: McCrea Decl.)

Okoro's central claim concerns BOP Program Statement 1351.05, ¶ 12.a(2)(d)(1) concerning Federal Presentence Reports (PSR) and Statements of Reasons (SOR) from Judgments in Criminal Cases.  (Ex. 1: Attachment B to Zebot  Decl. at 15-16.)  It provides in relevant part: "For safety and security reasons, inmates are prohibited from obtaining or possessing photocopies of their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g. D.C., state, foreign, military, etc.)  (*Id.*:

¶ 12.a(2)(d)(1).  Reasons for this prohibition were explained as follows:

> ■  Many PSRs and SORs contain information

> regarding the inmates' government assistance, financial resources, community affiliations, etc.

- ■ The Bureau has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, have financial resources, etc.

- ■ Inmates who refuse to provide the documents are threatened, assaulted, and/or seek protective custody.  Likewise, inmates providing PSRs and SORs containing harmful information are faced with the same risks of harm.

(*Id.*)

Krueger, Zamora, Tanel, and Black were not aware of Okoro's lawsuit when they are alleged to have retaliated against him for bringing his original suit.  (*See* Exs. 4-7.)  Neither Krueger nor Zamora intercepted or interfered with Okoro's certified legal mail containing his amended mandamus complaint to this Court in his prior suit (02-cv-74214) nor Okoro's mail back and forth with his father in Nigeria.  (*See* Exs. 4-5.)  Krueger did not direct Tanel and Black to attempt to frame Okoro with a drug-positive urinalysis (Ex. 4); Tanel and Black did not attempt to frame Okoro with any tampered urinalysis (Exs. 6 & 7).    Neither Tanel nor Black lied in connection with Okoro's administrative detention (Exs. 6 & 7); Krueger had no involvement (Ex. 4).  Tanel did not direct any of the searches of Okoro's locker for his PSR or SOR (Ex. 6); neither Black nor Krueger had any involvement (Exs. 4 & 7).  Krueger, Zamora, Tanel, and Black did not conspire with or aid and abet anyone to deprive Okoro of a BP-9 form.  (Exs. 4-7.)

<u>ARGUMENT</u>

    *1.    The Court should dismiss defendants Director Lappin and Nalley in their individual capacities for lack of personal jurisdiction since they do not have minimum contacts with the forum state to justify such jurisdiction.*

Okoro has not borne the burden of demonstrating that personal jurisdiction exists in the forum state of Michigan for any alleged acts of BOP Director Lappin located in Washington, D.C. or BOP Regional Director Nalley located in Kansas City, Kansas.

A civil plaintiff, as the party seeking to assert personal jurisdiction, bears the burden of demonstrating that such jurisdiction exists. *See MCNIC Oil & Gas Co. v. IBEX Resources Co.*, 23 F.Supp.2d 729, 732 (E.D. Mich. 1998) (Gadola, J.).

When damage claims are asserted individually against a federal employee seeking recovery against his or her personal resources, a plaintiff is required to plead facts establishing that the court has personal jurisdiction over him or her with respect to the claims. *See, e.g., Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988). Michigan's long-arm statute extends jurisdiction to the maximum extent permitted by the due process clause of the constitution. *Sifers v.Horen*, 385 Mich. 195, 199; 188 N.W.2d 623 (1971).

Due process requires that a defendant have "minimum contacts" with the forum state of such a character "that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The minimum contacts analysis has at least three fundamental components. First, a defendant's contacts must have a basis in "some act by which [he or she] purposefully avails [himself or herself] of the privilege of conducting activities within the forum [s]tate . . . ." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Burger King Corp. v. Rudzewitcz*, 471 U.S. 462, 474-75 (1985) ("[T]he constitutional touchstone remains whether the defendant purposefully established

'minimum contacts' in the forum State . . . . This 'purposeful availment' requirement ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person . . . .

Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant

*himself* that create a 'substantial connection' with the forum State.") (citations omitted).  Second,

the claim must be related to or have arisen out of defendant's contacts with the forum.  *Dollar Sav.*

*Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984).  Third, a defendant's contacts

with the forum state must be such that he or she should reasonably anticipate being "haled into

court" there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-97 (1980).  Unless

these requirements are satisfied, personal jurisdiction may not be exercised over a defendant

"[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate . . .

[in the forum state]; even if the forum State has a strong interest in applying its law to the

controversy; [and] even if the forum State is the most convenient location for litigation . . . ."  *Id.* at

294.

       The fact that a federal employee's employing agency may have offices in the forum state or

conducts business there is generally not sufficient to establish constitutionally sufficient minimum

contacts for purposes of personal jurisdiction.  *See Stafford v.Briggs*, 444 U.S. 527, 543-45 (1980)

(absent minimum contacts other than those arising from federal employment, court may not

exercise personal jurisdiction over federal official in his individual capacity); *see also McCullough*

*v. Bureau of Prisons*, 2006 WL 667166, *2 (D.D.C. 2006) ("The mere fact that defendants Haro,

Ballash, Gonzalez and Brokenshire are employees of the BOP, the headquarters office of which is

in the District of Columbia, does not render them subject to suit in their individual capacities in this

district.").

       Since Okoro has not demonstrated that Director Lappin in Washington, D.C. and (Regional

Director) Nalley in Kansas City, Kansas have minimum contacts with Michigan, this Court should dismiss them for lack of personal jurisdiction.

> **2.    *The Court should dismiss defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel, and Black for insufficiency of service of process both because Okoro, a party, effected service upon them and because the United States has not been served process for a suit against its officers and employees.***

Okoro, the plaintiff, has admitted personally serving process by certified mail on Krueger, Zamora, Marberry, Nalley, Bonneville, Tanel,[14] and Black and by ordinary (first-class) mail on Director Lappin.

Rule 4(c)(2) of the Federal Rules of Civil Procedure provides that"[s]ervice may be effected by any person *who is not a party* and who is at least 18 years of age."  (emphasis added).  Thus, Okoro was expressly prohibited from serving process upon a defendant, and this action is properly dismissed without prejudice for insufficiency of service of process as to defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel, and Black .  *Boltes v. Entex*, 158 F.R.D. 110, 114 (D.C. Tex. 1994) (pro se in forma pauperis plaintiff).[15]  Because Okoro had three strikes under the PLRA, he was not entitled to have Marshals Service appointment for service as a matter of right.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(2).  However, if Okoro had no other person to effect service for him, he could have filed a motion with the Court for discretionary Marshal Service appointment (Fed. R. Civ. P. 4(c)(2): "At the request of the plaintiff, the court *may* direct that service be effected by a United States Marshal . . . .") or used the waiver of service of

---

[14]  Okoro did not file a service return for Tanel, but presumably he will not deny that he used the same service method for her as the others at FCI Milan.

[15]  Mail service is permitted only as allowed by adopted state law.  *See* Fed. R. Civ. P. 4(e)(1) & (2).  Ordinary first-class service on Lappin does not meet state requirements; the certified mail to the others did not indicate "delivery restricted to the addressee" to meet state requirements.  MCR 2.105(A)(2).  For these additional reasons, there was insufficiencey of service of process.

summons procedure (Fed. R. Civ. P. 4(d)(2)) (emphasis added).  That he did not do.

An additional reason for insufficiency of service of process is that the United States needed to be served: the United States Attorney was not served.  Fed. R. Civ. P. 4(i)(2)(B); 4(i)(1)(A) &(B) (Ex. 1: Zebot Decl.)  And Okoro has not shown proof of any service of process on the Attorney General of the United States.

> **3.       The Court should dismiss Okoro's action or alternatively grant defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel and Black summary judgment because Okoro has not exhausted his administrative remedies under the Prisoner Litigation Reform Act of 1995.**

Okoro implicitly conceded that he had not exhausted his administrative remedies as to the change of PSR/SOR policy as of the time he filed his complaint in this action, January 26, 2005. (R. 1: Compl. ¶ 3 at 2; *see also* R. 32: Amended Compl. ¶ 2 at 2-3.)[16]  Under the PLRA (42 U.S.C. § 1997e(a)) a prisoner may not exhaust administrative remedies during the pendency of his federal suit.  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The remand by the Sixth Circuit commanding consistency with *Jones*[17] was because of the reliance on earlier mistaken Sixth Circuit authority reading a special pleading requirement for exhaustion of administrative remedies into the PLRA.

However, while determining failure to exhaust to be an affirmative defense, the Supreme Court in *Jones* specifically recognized that failure to exhaust, like any other affirmative defense, may be the basis for a motion to dismiss for failure to state a claim where plaintiff 's complaint makes admissions.  *Jones*, 127 S.Ct. at 921 ("As noted, that is not to say that failure to exhaust

---

[16]  Except for his idiosyncratic argument that his (unattached) letter to Senator Levin in 2002 constituted sufficient exhaustion (see R. 32: Append. A & B at 18 & 19 of 28), Okoro's argument is confined to his exhaustion attempts undertaken *after* the Court's August 16, 2005 dismissal (R. 29).  (*See* R. 32: Amended Compl. ¶ 2 at 3-4.)

[17]  *Jones v. Bock*, 127 S.Ct. 910 (2007).

cannot be a basis for dismissal for failure to state a claim."); *accord*, *Swimp v. Metrish*, No. 2:06-CV-44, 2007 WL 763179, at *1 (W.D. Mich. 2007) (Quist, J.) ("The Plaintiff filed a supplement to his objections in which he asserted that the Supreme Court's recent decision in *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910, ___ L.Ed.2d ___(2007), is relevant to this matter.  However, the Plaintiff's argument is misplaced.  Unlike in *Jones*, where the complaint was dismissed at the screening phase by the district court because the plaintiff failed to show exhaustion of administrative remedies, and not upon motion by either party, here the Defendants properly raised the exhaustion issue in their motion to dismiss.").

The one respect in which Okoro tries to claim (albeit in his amended complaint) that he exhausted before filing the present action, January 26, 2005, is his apparent (unattached) letter to Senator Levin in 2002.  (See  R. 32: Append. A & B at 18 & 19 of 28.)  In *Woodford v. Ngo*, 126 S.Ct. 2378 (2006), the Supreme Court read the PLRA to require "proper exhaustion" that "demands compliance with an agency's deadlines and other critical procedural rules."  *Ngo*, 126 S.Ct. at 2386; *see* 28 C.F.R. §§ 542.13-.18 (2006) (BOP administrative remedy procedures).  An inmate cannot create his own administrative remedy system by writing a Senator and calling the response a "national administrative response" as Okoro has done.

If dismissal is not deemed appropriate, defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel and Black should have summary judgment for lack of any genuine issue of material fact about Okoro's failure to exhaust administrative remedies as to all his claims.  (Ex. 2: McCrea Decl. plus Ex. 3: Brown Decl.)

In his amended complaint Okoro makes reference to his belated (post-lawsuit) attempt to exhaust, starting at the regional level with a contention that it is a sensitive matter that merits skipping the institutional level.  That attempt is too late to meet the requirements of the PLRA. *Freeman v. Francis*, 196 F.3d at 645.  Furthermore, BOP properly exercised its discretion to reject

-15-

Okoro's attempt to jump over the institution-level as a sensitive issue.  (R. 32: Append. C & D to Ex. X at 20 & 21 of 28); *see* 28 C.F.R. § 542.14(d)(1).[18]  And Okoro did not follow up to exhaust.  (Ex. 2: McCrea Decl.)

> **4.    Whether the Court should dismiss all of Okoro's claims against defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel and Black because of qualified immunity.**

Defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel and Black all enjoy qualified immunity from Okoro's *Bivens*[19] claims.  Qualified immunity provides that government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an immunity from suit rather than a mere defense to liability.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In recent years the Supreme Court has instructed courts to use a two-part test to assess qualified immunity.[20]  *Katz v. Saucier*, 533 U.S. 194, 201 (2001).  The "initial inquiry" must be

---

[18] In relevant part this subsection reads: "If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted.  Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden.  The Warden shall allow a reasonable extension of time for such a resubmission."

[19] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[20] The Sixth Circuit has sometime expressed this under a two-step test, *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) ("(1) whether . . . a constitutional right has been violated, and if so, (2) whether that right was clearly established"), sometimes under a three-step version, *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005) ("(i) 'whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;' (ii) 'whether the violation involved a clearly established constitutional right of which a reasonable person would have known;' and (iii)

(continued...)

whether the officer's conduct violated a constitutional right.  *Id.*  If no constitutional right was violated, then "there is no necessity for further inquiries concerning qualified immunity."  *Id.*  But "if a violation could be made out on a favorable view of the parties' submissions," then "the next sequential step is to ask whether the right was clearly established."  *Id.*  Here Okoro has not shown any constitutional violation.  Further, it was certainly not "clearly established."

## A.  FAILURE TO STATE A CONSTITUTIONAL CLAIM

Okoro does not state a coherent constitutional claim against the BOP policy on PSRs and SORs.  (*See* R. 1: Compl. ¶¶ 1-10 at 1-7; R. 32: Amended Compl. ¶¶ 3-11 at 5-11.)  Insofar as he posits a constitutional right to the PSRs and SORs of other inmates, his contentions are frivolous: these documents are confidential and not available to the public.  *See United States Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988) (courts are very reluctant to give third parties access to the presentence report because of the need to protect the confidentiality of the information and the fear that disclosure of the reports will have a chilling effect on the willingness of various individuals to contribute information contained in the report).  As regards Okoro's own documents and the possible need for use in a court case, his right to access is retained.  BOP Program Statement 1351.05, ¶ 12.a(2)(d)(1) at 16;[21] *see Elrod v. Swanson*, ____F.Supp.2d____, 2007 WL 851235, at

---

[20](...continued)
'whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively reasonable in light of the clearly established constitutional rights.' " The difference between the tests may be more formal than substantive.  *Estate of Carter v. City of Detroit*, 408 F.3d 689, 311 n.2 (6th Cir. 2005).

[21]  In relevant part: "Inmates needing a copy of their PSRs or SORs for filing as an attachment in a court case may obtain, complete, and submit to the court an Inmate Request for Certification or Judicial Notice of Pre-sentence Report and/or Statement of Reasons form (BP-S757.013).  The form, which includes instructions for completion, must be available to inmates in the housing units and law libraries."  Furthermore, inmates are given opportunity to access and review these records with unit staff.  (*See* Ex. 1: Attachment B to Zebot Decl: ¶ 12.a(2)(d)(1) at 16.)

*19

(D.Kan. March 19, 2007).  Finally, Okoro's contention that staff may engage in "illegal censoring" of the PSRs or SORs has no sanction in the BOP policy, which provides  no authorization for deleting or changing the documents.  Okoro has cited no case authority and the undersigned is aware of none that finds any constitutional violation in the BOP policy.  (Also, depriving an inmate of a BP-9 administrative remedy form is not a constitutional violation.  *See Flick v. Alba*, 932 F.2d 728 (8th Cir. 1991).)

### B.  NO PERSONAL INVOLVEMENT

There are only conclusory, vague or general allegations of constitutional violations by defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel and Black that cannot survive dismissal.  *Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004) (complaint must show active unconstitutional behavior; no specific acts alleged at all);  *Nuclear Transportation & Storage, Inc. v. United* States, 890 F.2d 1348, 1354-55 (6th Cir. 1989) (lack of specificity, factual allegations connecting individual defendants to alleged illegal actions), *cert. denied*, 494 U.S. 1079 (1990) *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint . . . to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings."); *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir. 1982) (plaintiff must allege facts demonstrating "who did what to whom and why").

### C.  NO *RESPONDEAT SUPERIOR* LIABILITY

No specific allegations of personal involvement being made, Okoro cannot rely on

*respondeat superior* theory based on any subordinates' implied actions.[22]  *E.g,, Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).

### D.  INSUFFICIENT CONSPIRACY/AIDING & ABETTING ALLEGATIONS

Okoro's vague and conclusory allegations of "conspiracy" and "aiding and abetting" various violations do not suffice.  *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004).  *Accord, Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977) (specificity needed showing existence and scope of alleged conspiracy, not vague, conclusory allegations); *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988) (plaintiff must show existence or execution of claimed conspiracy, overt acts related to promotion of conspiracy, some link between alleged conspirators, allegations conspirators agreed to commit unconstitutional acts); *see First Interstate Bank of Nevada, N.A. v. Chapman & Cutler*, 837 F.2d 775, 779 (7th Cir. 1988) (aiding and abetting: secondary party must be alleged to proximately cause violation; showing of substantial causal connection between culpable conduct of alleged aider and abettor and harm).

> **5.    *The Court should dismiss the declaratory and injunctive claims concerning the Bureau of Prisons's regulation prohibiting inmates' possession of their PSRs and SORs because Okoro fails to state a claim upon which relief can be granted.***

For the reasons stated in Argument 4 (A) above, Okoro fails to state a claim upon which relief can be granted on his declaratory and injunctive (official capacity) claims.*[23]*

---

[22] Especially Associate Warden Krueger, Inmate Systems Manager Zamora, Warden Marberry, Director Lappin, and Regional Director Nalley.

[23] No official capacity damages are available under *Bivens*.  *See FDIC v. Meyer*, 510 U.S. 471, 483-86 (1994) (no *Bivens* action against federal agency); *Dugan v. Rank*, 372 U.S. 609 (1963) (suit against federal officer in official capacity treated as suit against United States).

**6.      *The Court should dismiss Okoro's retaliation claims against defendants Krueger, Zamora, Tanel, Black for insufficient pleading or alternatively grant these defendants summary judgment on the retaliation claims.***

With respect to Okoro's retaliation claims against defendants Krueger, Zamora, Tanel, and Black, he fails to plead sufficiently: (1) plaintiff engaged in protected conduct; (2) adverse action was taken against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) causal connection between (1) & (2), *i.e.*, adverse action motivated at least in part by plaintiff's protected conduct.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Defendants contend Okoro did not plead a sufficient causal connection.

Alternatively, defendants Krueger, Zamora, Tanel and Black should have summary judgment for lack of any genuine issue of material fact about their absence of retaliation against Okoro. (Ex. 4: Krueger Decl.; Ex. 5: Zamora Decl.; Ex. 6: Tanel Decl.; and Ex. 7: Black Decl.); *see Thaddeus-X v. Blatter*, 175 F.3d at 399 (6th Cir. 1999) (analysis of motive in retaliation claims may mean "early dismissal" without shifting burden).

<u>CONCLUSION</u>

WHEREFORE, defendants Krueger, Zamora, Marberry, Director Lappin, Nalley, Bonneville, Tanel, and Black should be dismissed and/or have summary judgment.

Respectfully submitted,

STEPHEN J. MURPHY
United States Attorney


s/Francis L. Zebot
FRANCIS L. ZEBOT
Assistant U.S. Attorney

-20-

211 W. Fort St., Suite 2001
Detroit, Michigan 48226
(313) 226-9774
E-mail: francis.zebot@usdoj.gov
P22700

Dated: May 10, 2007

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 10, 2007 I electronically filed the foregoing paper with the Clerk

of the Court using the ECF system which will send notification of such filing to the following:

N.A.

I further certify that I have mailed by U.S. mail the paper to the following non-ECF

participants: Ralphael Okoro *# 09567-424*, Federal Correctional Institution, P.O. Box 1000, Milan,

MI 48160

s/Francis L. Zebot
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI  48226
Phone:  (313) 226-9774
E-mail: francis.zebot@usdoj.gov
P22700