UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RAPHAEL OKORO,

        Plaintiff,                CIVIL ACTION NO. 05-70269

    v.                      DISTRICT JUDGE PAUL D. BORMAN

JEFF KRUEGER, JOHN HEMINGWAY,    MAGISTRATE JUDGE VIRGINIA M. MORGAN
H. J. MARBERRY, MICHAEL NALLY,
JANICE BONNEVILLE, LT. D. TANEL,
LT. BLACK, T.A. ZAMORA, and
DIRECTOR OF PRISONS,

        Defendants.
_____/


## REPORT AND RECOMMENDATION

## I.  Introduction

      This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of

the Michigan Department of Corrections (MDOC), seeks mandamus and injunctive relief, as

well as compensatory and punitive damages, arising from the alleged promulgation and

enforcement of a Bureau of Prisons ("BOP") policy that declared certain legal documents,

presentence reports ("PSRs") and statement of reasons ("SORs"), to be contraband and required

that they be destroyed.  The matter comes before the court on defendants' motion[1] to dismiss

_____

      [1]Defendant Hemingway has not appeared in this action and does not join in this motion,
nor does he appear to have ever been served.  For purposes of this Report and Recommendation,
"defendants" will refer to all of the defendants besides defendant Hemingway.

-1-

and/or for summary judgment.  For the reasons stated below, the court recommends that

defendants' motions be **GRANTED** and that plaintiff's claims be **DISMISSED WITH**

**PREJUDICE** except as to the retaliation claim against defendants Krueger, Tanel and Black

which is dismissed without prejudice for insufficient service of process.

## II.  Background

Plaintiff was formerly a federal prisoner at the Federal Correctional Institution at Milan,

Michigan ("FCI Milan").  According to plaintiff, prison officials posted a notice for inmates on

October 2, 2002, stating, in part, that "no later than November 2, 2002, you must remove from

the institution any copies of PSRs and SORs currently in your possession."

On October 23, 2002, plaintiff and three other inmates filed applications to waive

prepayment of filing fees in order to file a class action suit challenging the BOP policy.  Okoro

v. Hemingway, Case No. 02-74214, Applications, D/E #1-3.  Those applications was denied, but

plaintiff later filed an individual complaint and prepayment of filing fees was waived.  Okoro v.

Hemingway, Case No. 02-74214, Order of Hon. Paul D. Borman, D/E #5; Complaint, D/E #15,

Order of Hon. Paul D. Borman, D/E #14.  However, that relief was predicated on plaintiff's

claim of *in forma pauperis* status despite the fact that he was unable to assert that status because

he had "three strikes" against him within the meaning of 28 U.S.C. § 1915.  After it came to light

that plaintiff could not proceed *in forma pauperis*, his complaint was dismissed by the district

judge.  Okoro v. Hemingway, Case No. 02-74214, Order, D/E #37.  Plaintiff appealed that

dismissal, and while the Sixth Circuit affirmed the dismissal, it ordered that the dismissal be

without prejudice and that plaintiff had the right to re-file upon payment of the applicable filing

fee.  Okoro v. Hemingway, Case No. 02-74214, Order of the Sixth Circuit, D/E #48.  On January

12, 2005, Judge Borman ordered that plaintiff re-file his action within thirty days.  Okoro v.

Hemingway, Case No. 02-74214, Order, D/E #50.

On January 26, 2005, plaintiff filed a new mandamus complaint against defendants (D/E

#1).  In general, plaintiff alleged that defendants (1) conspired to deny plaintiff's civil and

constitutional rights under 18 U.S.C. §§ 2, 242, 2382-2385, 1698, 1701-1703 and Amendments

1, 5, and 8 to the United States Constitution, and (2) conspired to retaliate against plaintiff for

plaintiff's exercise of his First Amendment right to petition for redress.  Specifically, defendant

Krueger was alleged to have conspired with defendants Nally and Bonneville in an arbitrary

enforcement of the national policy declaring PSRs and SORs contraband and destroying them.

Defendant Hemingway was also alleged to have conspired with defendants Lappin, Nally,

Krueger, and Bonneville in an arbitrary enforcement of the national policy declaring PSRs and

SORs contraband and destroying them.  Defendant Zamora was alleged to have conspired with

defendants Hemingway and Krueger in a plot to destroy plaintiff's mail.  Defendant Marberry

was alleged to have inherited defendant Hemingway's liability when she took over his job as

warden.  Defendant Lappin, identified as Director of Prisons, was alleged to have conspired with

defendants Nally, Hemingway, Krueger, and Bonneville in an arbitrary enforcement of the

national policy declaring PSRs and SORs contraband and destroying them.  He was also alleged

to have conspired to deny plaintiff his fifth amendment due process right to adequate notice and

sufficient time to exhaust his administrative remedies before publishing the arbitrary policy.

Defendant Nally was alleged to have conspired with other defendants Lappin, Hemingway,

Krueger, and Bonneville.  Defendant Bonneville was alleged to have conspired with other defendants Lappin, Hemingway, Krueger, and Bonneville.  Defendants Tanel and Black were alleged to have conspired to retaliate against plaintiff for the exercise of his First Amendment rights.

On August 16, 2005, Judge Borman entered an order (D/E #29) dismissing this prisoner civil rights action on the ground that plaintiff failed to demonstrate that he exhausted his administrative remedies prior to filing suit, as required by 42 U.S.C. § 1997e(a).  Plaintiff filed a motion for reconsideration of that order (D/E #30).  On September 9, 2005, Judge Borman entered an order denying plaintiff's motion for reconsideration (D/E #31).

Plaintiff subsequently filed two additional pleadings, one entitled "THIS IS A SECOND RE-FILING OF THE WRIT OF MANDAMUS COMPLAINT, UPON EXHAUSTION OF ADMINISTRATIVE REMEDY," (DE #32), and one entitled "PLAINTIFF'S MOTION PURSUANT TO FED.R.CIV.P. 12(f), CITIZEN PROTECTION ACT OF 1998."  On February 1, 2006, Judge Borman adopted an early Report and Recommendation made by the undersigned and dismissed plaintiff's additional pleadings (D/E #41).

On February 7, 2006, plaintiff filed a motion to reopen his case, claiming that he had now exhausted his administrative remedies and that his case should be reopened "in the interests of justice" (D/E #42).  On May 30, 2006, Judge Borman adopted an early Report and Recommendation made by the undersigned and denied plaintiff's motion to reopen the case (D/E #50).  Plaintiff appealed the order denying his motion to reopen the case (D/E #51), and, on April 6, 2007, the Sixth Circuit granted plaintiff's appeal and ruled that plaintiff's case should be

reopened, in light of the recent case <u>Jones v. Bock</u>, __ U.S. __, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).  <u>Okoro v. Hemingway</u>, 481 F.3d 873 (6th Cir. 2007).

On May 10, 2007, defendants filed a motion to dismiss and/or for summary judgment (D/E #71).  In that motion, defendants argued that the Court should (1) dismiss defendants Lappin and Nalley in their individual capacities for lack of personal jurisdiction since they did not have minimum contacts with Michigan to justify such jurisdiction, (2) dismiss all defendants for insufficiency of service of process, (3) dismiss plaintiff's complaint, or grant defendants summary judgment, because plaintiff failed to exhaust his administrative remedies, (4) dismiss all of plaintiff's claims on the grounds of qualified immunity, (5) dismiss the declaratory and injunctive claims concerning the BOP's regulations for failure to state a claim upon which relief can be granted, and (6) dismiss plaintiff's retaliation claim for insufficient pleading or, in the alternative, grant defendants summary judgment on the retaliation claim.

On May 25, 2007, plaintiff filed a response in opposition to defendants' motion to dismiss and/or summary judgment (D/E #73).  Plaintiff argued that (1) he failed to exhaust his administrative remedies because defendants denied him access to the official forms necessary to file a grievance and put him in segregation as punishment for asking for the forms, (2) because defendants based their arguments on plaintiff's second complaint, which was stricken from the record, their motion is frivolous in fact and law, (3) this case presents major statutory and constitutional questions regarding the BOP's policy declaring court documents contraband and defendants have failed to address those questions at all times, (4) his claim was not barred by sovereign immunity because 28 U.S.C. § 1361 should be treated as a statutory waiver of

sovereign immunity, (5) he is entitled to declaratory and injunctive relief because such relief is clearly contemplated by the APA and 28 U.S.C. § 1361, (6) defendants' claim that plaintiff asserted a respondeat superior theory is frivolous because plaintiff clearly claimed that all defendants conspired or acquiesced in the violation of plaintiff's rights, (7) he stated a claim of treason that defendants' failed to address, as well as valid constitutional claims, (8) defendants are not entitled to qualified immunity because they did not produce any evidence that the BOP's policy was actually related to the internal security of the prisons and because defendants did not prove that their various wrong actions were discretionary functions that did not violate plaintiff's clearly established rights, (9) he stated claims against defendants in their individual capacities, claims pursuant to 42 U.S.C. § 1985 and § 1986, and claims of retaliation, (10) defendant Lappin should be subject to the jurisdiction of the Court because of a letter he wrote, dated November 4, 2002, that reaffirmed the BOP's policy and commanded the unit officers to confiscate plaintiff's court documents, and (10) he properly served defendants through the U.S. Postal Service.

On June 21, 2007 defendants filed a reply to plaintiff's response to defendants' motion to dismiss and/or for summary judgment (D/E #76), in which defendants reiterated their earlier arguments.

## III.  Standard of Review

Defendants move for both dismissal, pursuant to Fed. R. Civ. Pro. 12(b), and summary judgment, pursuant to Fed. R. Civ. Pro. 56(b0.  Rule 12(b)(2) permits a district court to dismiss a plaintiff's complaint for "lack of jurisdiction over the person."  Rule 12(b)(5) permits a district court to dismiss for "insufficiency of service of process."  Rule 12(b)(6) permits a district court

to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."

Under Rule 12(b)(6) "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006), quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[2] In considering whether to grant a defendant's motion to dismiss pursuant to Rule 12(b)(6) a district court must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff. Kottmyer, 436 F.3d at 688. A district court need not, however, accept as true legal conclusions or unwarranted factual inferences. Kottmyer, 436 F.3d at 688.

---

[2]Recently, however, the Supreme Court revised the "no set of facts" portion of the Rule 12(b)(6) standard in Bell Atlantic Corp. v. Twombly, __ U.S. __, __, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Twombly held that the "famous" no-set-of-facts formulation "has earned its retirement," and instead dismissed the plaintiff's antitrust-conspiracy complaint because it did not contain facts sufficient to "state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. Significant "uncertainty as to the intended scope of the Court's decision [in Twombly ]" persists, however, particularly regarding its reach beyond the antitrust context. Iqbal v. Hasty, No. 05-5768-CV, __F.3d __, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007) (applying the plausibility standard in the context of a motion to dismiss Iqbal's § 1983 claims based on qualified immunity). The Second Circuit in Iqbal also closely analyzed the text of Twombly and determined that it requires "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal, 490 F.3d 143, 2007 WL 1717803, at * 11. While the Sixth Circuit has not expressly ruled on the scope of Twombly, it has noted that eight federal district courts in the Sixth Circuit have applied Twombly in the manner described in Iqbal, while one restricted it to the antitrust-conspiracy context. Weisbarth v. Geauga Dist., ___ F.3d ___, 2007 WL 2403659 at *3 (6 th Cir. August 24, 2007), citing Collins v. Marva Collins Preparatory Sch., No. 1:05cv614, 2007 WL 1989828, at *3 n. 1 (S.D.Ohio July 9, 2007) In this case, as explained below, disposition of the motion does not depend upon Twombly's effect on the dismissal standard and need not be further discussed.

Summary judgment is governed by Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

As discussed above, defendants have moved for dismissal and summary judgment on a number of different grounds. Each of defendants' arguments shall be addressed in turn.

### A. Personal Jurisdiction

The doctrine of sovereign immunity does not bar damage actions against federal officials who have been sued in their individual capacities for violation of a plaintiff's constitutional rights. See Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 116 (6th Cir. 1988). However, in order to maintain a damage action against the official in his individual capacity, the plaintiff must bring the defendant before the court and the ordinary requirements for exercise of *in personam* jurisdiction are fully applicable. Ecclesiastical Order of the Ism of Am, Inc., 845 F.2d at 116.

The procedure for determining jurisdiction is clearly defined in this circuit and, while a plaintiff must ordinarily prove jurisdiction by a preponderance of the evidence, that standard does not apply in this case because there has been no evidentiary hearing on the jurisdiction question. Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1271-1272 (6th Cir. 1998). Instead, when a court rules on a jurisdictional motion to dismiss without conducting an evidentiary hearing, it must consider the pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions of the parties. Moreover, to defeat such a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction. Dean, 134 F.3d at 1271-1272. The Sixth Circuit has acknowledged that this is a relatively light standard for a plaintiff, but it finds that it is appropriate in this situation because any other rule would allow a

defendant to defeat personal jurisdiction by merely filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff.  Serras, 875 F.2d at 1214; Dean, 134 F.3d at 1271-1272.

To establish personal jurisdiction, a plaintiff must show that (1) the defendant had minimum contacts with the forum state such that defendant should 'reasonably anticipate being haled into court there, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.  Fortis Corporate Insurance v. Viken Ship Management, 450 F.3d 214, 218 (6th Cir. 2006) (citations omitted).  "The minimum contacts prong is satisfied either through specific or general jurisdiction."  Fortis Corporate Insurance, 450 F.3d at 218. Specific jurisdiction subjects the defendant to suit in the forum state only for claims that arise out of or relate to a defendant's contacts with the forum while general jurisdiction is established when a defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power on all claims.  Fortis Corporate Insurance, 450 F.3d at 218.

In this case, defendants challenge the Court's personal jurisdiction over defendants Lappin and Nalley in their individual capacities.  In response to defendants' argument, plaintiff points to a November 4, 2002 letter (attached as Exhibit B to plaintiff's motion to reopen his case (D/E # 42), in which defendant Lappin allegedly reaffirmed the BOP's policy and commanded that unit officers confiscate plaintiff's documents.  However, an examination of the document reveals that the letter was written by defendant Hemingway and does not contain any

reference to defendant Lappin. Regarding defendant Nalley, plaintiff fails to make an argument as to the Court's jurisdiction.

As discussed above, because there has not been an evidentiary hearing on the issue of jurisdiction, this Court must consider the pleadings and affidavits in a light most favorable to the plaintiff and plaintiff need only make a prima facie showing of jurisdiction. Dean, 134 F.3d at 1271-1272. Plaintiff, however, has completely failed to make any showing of jurisdiction and his claims against defendants Lappin and Nalley in their individual capacities should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(2).

**B.  Service of Process**

A plaintiff is responsible for serving the summons and complaint within the applicable time period. Fed. R. Civ. P. 4(c)(1).[3] Without such personal service, a district court is without jurisdiction to render judgment against a defendant. Friedman v. Estate of Presser, 929 F.2d 1151, 1156 (6th Cir.1991). The time limit for service of process is 120 days after the filing of the complaint. Fed. R. Civ. P. 4(m). "Absent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal." Byrd v. Stone, 94 F.3d 217, 219 (6th Cir.1996), citing Habib v. Gen. Motors Corp., 15 F.3d 72, 73 (6th Cir.1994).

In this case, defendants Kruegar, Zamora, Lappin, Nalley, Bonneville, Tanel, and Black were all sued in both their individual and official capacities. Pursuant to Fed. R. Civ. Pro. 4(2)(B), whenever an officer or employee of the United States is sued in his individual capacity,

---

[3]For plaintiffs proceeding in forma pauperis, under 28 U.S.C. §1915(d), the officers of the court, e.g., U. S. Marshals, shall serve process. This section is not applicable because plaintiff was not granted I.F.P. status.

regardless of whether he is also sued in his official capacity, service is effected by serving the United States in the manner prescribed by Fed. R. Civ. Pro. 4(i)(1) and by serving the officer or employee in the manner prescribed by Fed. R. Civ. Pro 4(e)-(g)[4]. Fed. R. Civ. Pro 4(e) provides that, unless otherwise provided by federal law, service upon an individual may be effected in any judicial district of the United States:

> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

In this case, plaintiff attempted to serve defendants by mailing them a copy of the summons and complaint via certified mail. This was not an action originally brought in State courts of general jurisdiction so Fed. R. Civ. Pro. (4(e)(1) does not apply and plaintiff's method of service clearly fails to meet the requirements of Fed. R. Civ. Pro. 4(e)(2). Plaintiff's mailing of the summons and complaint clearly failed to meet the requirements of Fed. R. Civ. Pro. 4(e)(2) because he did not serve defendants personally, leave a copies at their places of abode, or deliver copies to an agent authorized by appointment or law to receive service of process. Consequently, plaintiff has failed to properly serve defendants Kruegar, Zamora, Lappin, Nalley, Bonneville, Tanel, and Black.

---

[4]Fed. R. Civ. Pro. 4(f) and 4(g) are not applicable to this case.

Plaintiff's method of service for those seven defendants was also insufficient because Fed. R. Civ. Pro. 4(2)(B) requires that the United States be served in the manner prescribed in Fed. R. Civ. Pro 4(i)(1). In this case, plaintiff failed to serve the United States in any manner. Moreover, Fed. R. Civ. Pro. 4(c)(2) provides, in part, that "Service may be effected by any person who is not a party and who is at least 18 years of age." In this case however, plaintiff admits that he attempted to serve defendants himself through the mail. Service by a party clearly contradicts the language of the rule.

Defendant Marberry was sued only in her official capacity. Fed. R. Civ. Pro. 4(2)(A) provides that service on an officer or employee of the United States sued only in an official capacity is effected "by serving the United States in the manner prescribed by Rule 4(i)(1) and by also sending a copy of the summons and complaint by registered or certified mail to the officer, employee, agency, or corporation." Plaintiff did serve defendant Marberry by certified mail, but he failed to serve the United States in the manner prescribed by Fed. R. Civ. Pro. 4(i)(1), or in any manner for that manner.

A complaint should only be dismissed for insufficient service of process absent a showing of good cause to justify a failure to effect timely service. Byrd, 94 F.3d at 219. In this case, plaintiff argues, without support, that his service was sufficient because Fed. R. Civ. Pro. 4(e)(2) contemplates service by a party through the United States Post Office. Given the plain language of that rule, plaintiff's argument is without merit. Plaintiff fails to make any argument against, or even reference, his failure to serve the United States. Plaintiff's claims should, therefore, be dismissed without prejudice pursuant to Fed. R. Civ. Pro. 12(b)(5).

## C. Exhaustion of Administrative Remedies

Defendants also argue that plaintiff's complaint must be dismissed because he failed to properly exhaust all of his administrative remedies prior to bringing this action. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e et seq., "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 126 S.Ct. at 2385 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.2002)) (emphasis in original).

In this case, plaintiff filed grievances based on his allegations against defendants after his complaint had already been filed. However, given that the plain language of the statute makes

exhaustion a precondition to filing an action in federal court, "a prisoner may not exhaust administrative remedies during the pendency of the federal suit." Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). Thus, plaintiff has failed to exhaust his administrative remedies.

With regard to his conspiracy claim based on the enforcement of the BOP's policy, plaintiff stated in his complaint that there was not time to exhaust the administrative remedy process before plaintiff's took his documents (D/E #1, p. 2). As noted above, proper exhaustion includes "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386. Furthermore, proper exhaustion is required even if proceeding through the administrative system would be "futile." Hartsfield v. Vidor, 199 F.3d 305, 308-10 (6th Cir.1999). Given those cases, the fact that there was insufficient time is not enough to establish proper exhaustion.

In support of his response to defendants' motion, plaintiff declares that, following the posting of the BOP policy, he requested grievance forms and his unit manager, Mr. Serrano, denied him the forms and punished him for insisting on them by placing plaintiff in the hole. Significantly however, plaintiff does not allege that there was no other source for obtaining a grievance form, that he made any other attempt to obtain a form, or that he attempted to file a grievance without a form. Defendants, on the other hand, provided two declarations from MDOC employees discussing plaintiff's ability to file grievance forms with them (Exhibits 2 and 3 attached to Defendants' Motion to Dismiss and/or for Summary Judgment).

Accepting plaintiff's allegations that he did not exhaust his remedies because of defendants' actions as true, those allegations are insufficient to excuse plaintiff's failure to

exhaust his administrative remedies.  In <u>Jones v. Smith</u>, 266 F.3d 399, 400 (6th Cir. 2001), the

Sixth Circuit found that the plaintiff had failed to demonstrate that he had exhausted his

administrative remedies where the plaintiff claimed that no grievance had been filed because his

counselor did not give him a grievance form and where plaintiff did not allege that there was no

other source for obtaining a grievance form, that he made any other attempt to obtain a form, or

that he attempted to file a grievance without a form.  <u>Jones</u>, 266 F.3d at 400.  Under those

circumstances, with also included the then-prevailing law that the burden was on the plaintiff to

plead an exhaustion of administrative remedies, the Sixth Circuit upheld the dismissal of the case

without prejudice.  <u>Jones</u>, 266 F.3d at 400.

Given the declarations provided by each side, there is no genuine issue of material fact as

to exhaustion of the conspiracy claim based on the enforcement of the BOP's policy.  This case

is similar to the facts in <u>Jones</u>, 266 F.3d at 400.  Plaintiff failed to exhaust his administrative

remedies as plaintiff failed to declare that Serrano was his only source for a form and defendant

provided declarations establishing plaintiff's other options.  With regard to his conspiracy claim

based on retaliation, plaintiff has made no argument regarding exhaustion while defendants have

provided the two affidavits.  Thus, like with the other conspiracy claim, there is no genuine issue

of material fact as to exhaustion and defendants are entitled to judgment as a matter of law.

### **D.  Qualified Immunity**

In a suit against an officer for an alleged violation of a constitutional right, the requisites

of a qualified immunity defense must be considered in proper sequence.  Where the defendant

seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that

the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

As discussed above, plaintiff has two general claims; a conspiracy claim based on enforcement of the BOP policy and a conspiracy claim based on retaliation. Regarding the conspiracy claim based on the BOP's policy, even assuming one of plaintiff's constitutional rights were violated because of the enforcement of the BOP policy, that right was not clearly established. As a preliminary matter, it is noteworthy that plaintiff provides absolutely no support for his assertion that he had a clearly established constitutional right to physically

possess his PSRs and SORs while in prison. Moreover, in <u>Thaddeus-X v. Blatter</u>, the Sixth

Circuit noted that:

> In <u>Turner v. Safley</u>, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d
> 64 (1987), for example, the Supreme Court held that 'a prison
> regulation [that] impinges on inmates' constitutional rights ... is
> valid if it is reasonably related to legitimate penological interests.'
> Similarly, <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 94 S.Ct. 2800, 41
> L.Ed.2d 495 (1974), holds that 'a prison inmate retains those First
> Amendment rights that are not inconsistent with his status as a
> prisoner or with the legitimate penological objectives of the
> corrections system.' Thus, review of such regulations offers a
> considerable degree of deference to the prison authorities, while
> still retaining ultimate judicial authority to evaluate the
> constitutional reasonableness of the regulation. <u>See</u> <u>Turner</u>, 482
> U.S. at 89-91, 107 S.Ct. 2254. [<u>Thaddeus-X v. Blatter</u>, 175 F.3d
> 378, 390 (6th Cir. 1999).]

Given that deference in the context of the prison setting, in addition to the lack of support offered

by plaintiff, even if a constitutional right was violated by the enforcement of the BOP policy,

that right was not clearly established and plaintiff's first conspiracy claim should be dismissed

with prejudice on the grounds of qualified immunity.

Regarding plaintiff's conspiracy claims based on retaliation, plaintiff does assert the

violation of a clearly established constitutional right. "It is well established that prisoners have a

constitutional right of access to the courts." <u>Thaddeus-X</u>, 175 F.3d at 390, citing e.g., <u>Lewis v.

Casey</u>, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); <u>Bounds v. Smith</u>, 430 U.S. 817,

821-24, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 577-80, 94

S.Ct. 2963, 41 L.Ed.2d 935 (1974); <u>Johnson v. Avery</u>, 393 U.S. 483, 488-90, 89 S.Ct. 747, 21

L.Ed.2d 718 (1969); <u>Ex parte Hull</u>, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941);

Berryman v. Rieger, 150 F.3d 561, 567 (6th Cir.1998); John L. v. Adams, 969 F.2d 228, 231-32 (6th Cir.1992). It is also well established that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right" and that § 1983 provides a remedy for such wrongs. Thaddeus-X, 175 F.3d at 386; citing Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759; Board of County Comm'rs, Wabaunsee County v. Umbehr, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Valot v. Southeast Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1225 (6th Cir.); Zilich v. Longo, 34 F.3d 359, 365 (6th Cir.1994). In this case, plaintiff alleges that defendants conspired to retaliate against plaintiff for plaintiff's filing of a complaint. As plaintiff's constitutional right to access the courts and to be free from retaliation when doing so are clearly established, defendants cannot avail themselves of a qualified immunity defense with regard to plaintiff's conspiracy claim based on retaliation.

### E.  Failure to State a Claim

As noted above, plaintiff has two general claims; a conspiracy claim based on the enforcement of the BOP policy and a conspiracy claim based on retaliation.[5] The standard for

---

[5]Defendants argue that plaintiff's complaint must be dismissed because it merely asserts a respondeat superior theory of liability. This court has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). Nevertheless, as noted by plaintiff, plaintiff never asserted such a theory in this case and he has always maintained that each defendant was involved in a conspiracy or acquiesced in the conspirators' plot.

proving a § 1983 conspiracy claim was set forth by this court in <u>Hooks v. Hooks</u>, 771 F.2d 935

(6th Cir.1985):

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. [<u>Hooks</u>, 771 F.2d at 943-44.]

"It is well-settled that conspiracy claims must be pled with some degree of specificity and

that vague and conclusory allegations unsupported by material facts will not be sufficient to state

such a claim under § 1983." <u>Gutierrez v. Lynch</u>, 826 F.2d 1534, 1538 (6th Cir.1987). <u>See</u> <u>also</u>

<u>Farhat v. Jopke</u>, 370 F.3d 580, 599 (6th Cir. 2004); <u>Spadafore v. Gardner</u>, 330 F.3d 849, 854 (6th

Cir. 2003). The Sixth Circuit has acknowledged, however, that because "[r]arely in a conspiracy

case will there be direct evidence of an express agreement among all the conspirators to

conspire, ... circumstantial evidence may provide adequate proof of conspiracy." <u>Weberg v.</u>

<u>Franks</u>, 229 F.3d 514, 528 (6th Cir.2000) (alteration in original).

In this case, regarding plaintiff's conspiracy claim based on the enforcement of the BOP

policy, plaintiff has failed to state a claim upon which relief can be granted. In that claim,

plaintiff merely lists defendants and alleges that they conspired together. While plaintiff does

describe the alleged effects of the conspiracy, his allegations are too vague to state a claim.

There is no evidence from which to infer that the defendants acted in concert or that the

defendants had a single plan when they acted. As discussed above, a conspiracy claim is

properly dismissed where the complaint merely alleges broad conclusory language void of the material factual allegations necessary to support a conspiracy theory. Such is the case here and plaintiff's first conspiracy claim should be dismissed.

Plaintiff also alleges that defendants, acting under the color of state law, violated 42 U.S.C. § 1983 by conspiring to retaliate against him for exercising his First Amendment right to seek redress in the courts. As discussed above, conspiracy claims must be plead with some degree of specificity. With regard to the conspiracy claim based on retaliation, plaintiff has failed to plead with any degree of specificity, or even mention retaliation, as to most of the defendants. While plaintiff alleged that all defendants conspired to retaliate against him, the only factual allegations detailing retaliation involve defendants Tanel, Black, and Krueger. Therefore, plaintiff's conspiracy claim based on retaliation should be dismissed as to all defendants except those three for lack of alleged personal involvement.

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc). "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context." Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir.2002) (internal quotation marks omitted).

In this case, with regard to defendants Tanel, Black and Krueger, plaintiff alleged all three elements of a retaliation claim.[6]  The alleged protected conduct was the filing of his original complaint.  The alleged adverse actions were defendants putting plaintiff in disciplinary segregation for two weeks, framing him for drug use, and wantonly searching his locker on numerous occasions.  The alleged causation is the only element potentially in doubt as plaintiff stated that defendants put him in segregation "for new reason" and that they searched his locker "looking for his PSR and SOR" (D/E #1, p. 2), which could be read as an admission that those adverse actions were not taken because of the protected conduct.  Nevertheless, given that plaintiff did allege that defendants wantonly retaliated against him for filing the original complaint, in addition to the fact that plaintiff is proceeding *pro se*, plaintiff has sufficiently alleged that the adverse actions were taken, at least in part, because of the protected conduct.  As noted above, in order to dismiss for failure to state a claim, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).  Even if it is unlikely that plaintiff could prove such facts, the Court cannot dismiss a *pro se* prisoner's pleading merely "because the court finds the plaintiff's allegations unlikely."  Denton v. Hernandez, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).  Accordingly, plaintiff adequately pleaded a conspiracy claim based on retaliation against defendants Tanel, Black, and Krueger.[7]

[6]However, these defendants have not been properly served.

[7]Plaintiff also claimed to have stated a claim based on a number of different statutes, including a claims for deprivation of rights of color of law, 18 U.S.C. § 242, misprision of treason, 18 U.S.C. § 2382, insurrection, 18 U.S.C. § 2383, seditious conspiracy, 18 U.S.C. §

## V. Conclusion

Plaintiff's claims against defendants Lappin and Nalley in their individual capacities should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(2) for lack of personal jurisdiction and defendants Krueger, Zamora, Lappin, Nalley, Bonneville, Tanel and Black should be dismissed without prejudice pursuant to Fed. R. Civ. Pro. 12(b)(5) for insufficient service of process. In addition, defendants are entitled to summary judgment because plaintiff had failed to exhaust his administrative remedies, defendants are entitled to qualified immunity as to plaintiff's conspiracy claim based on enforcement of the BOP's policy, and plaintiff, except for his allegations of a conspiracy to retaliate against him for exercise of his constitutional rights, has failed to state a claim upon which relief can be granted.

For the reasons discussed above, the court recommends that defendants' motion to dismiss and/or for summary judgment be **GRANTED in part** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE** except as to the retaliation claim against defendants

---

2384, advocating overthrow of the government, 18 U.S.C. § 2385, failure to promptly deliver the mail, 18 U.S.C. § 1698, obstruction of the mail, 18 U.S.C. § 1701, obstruction of correspondence, 18 U.S.C. § 1702, and destruction of mail, 18 U.S.C. § 1703. Courts, however, have refused to find a private cause of action for alleged violations of §242 and §§ 1701-1703. Woods v. McGuire, 954 F.3d 388, 391 (6th Cir. 1992); Contemporary Mission, Inc. v. U.S. Postal Service, 648 F.2d 97 (2d Cir. 1981); Moore v. Potter, 47 Fed. Appx. 318 (6th Cir. 2002). Moreover, there is no case law or basis supporting the existence of a private cause of action for plaintiff's claims of misprision of treason, insurrection, seditious conspiracy, advocating overthrow of the government, and failure to promptly deliver the mail. "The focal point is whether Congress, expressly or by implication, intended to create a private cause of action." Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 308 (6th Cir. 2000). In this case, there is no such congressional intent.

Krueger, Tanel and Black which is dismissed without prejudice for insufficient of service of process.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: September 21, 2007

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on September 21, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan